UNITED STATES of America, Plaintiff-Appellee,

v.

Danny C. CHRISTOPHER, Jack Herer, John B. Michel, John Gefall, and Kenneth R. Klotz, Defendants-Appellants.

Nos. 82–1149 to 82–1151, 82–1156 and 82–1203.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1982.

Decided March 8, 1983.

Certiorari Denied May 31, 1983. See 103 S.Ct. 2436.

---

Gefall & Klotz, Yoland Orozco, Los Angeles, Cal., for Christopher.

Michael R. Levine, Honolulu, Hawaii, for Herer.

Michael D. Nasatir, Nasatir, Sherman & Hirsch, Los Angeles, Cal., for Michel.

William F. Fahey, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before SNEED, and SKOPIL, Circuit Judges and INGRAM, District Judge.*

SKOPIL, Circuit Judge.

## OVERVIEW

Appellants appeal their misdemeanor convictions on charges of being present on federal property after normal work hours in violation of 41 C.F.R. §§ 101–20.302 and 101–20.315 (1981).[1] Appellants contend

---

\* Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

1. The regulations were promulgated by the General Services Administration pursuant to authority granted in 40 U.S.C. §§ 318 *et seq.* Section 101–20.302, Admission to Property, was amended in 1981. While the events here occurred after the amendment, the district court used the 1978 version of the regulation. No objection was made in the lower court. The variance was not briefed on appeal. We have carefully studied the amendments and conclude that the changes were insubstantial.

The regulations in effect in 1981 read:

§ 101–20.302 Admission to Property
Property shall be closed to the public during other than normal working hours. The closing of property will not apply to that space in those instances where the Government has approved the after-normal-working-hours use of buildings or portions thereof for activities authorized by Subpart 101–20.7. During normal working hours, property shall be closed to the public only when situations require this action to ensure the orderly conduct of Government business. The decision to close the property shall be made by the designated official under the Occupant Emergency Program after consultation with the buildings manager and the ranking represent-

that (1) the information was vague and indefinite; (2) they were selectively prosecuted; (3) there was insufficient evidence to establish every element of the crime beyond a reasonable doubt; and (4) the regulation is unconstitutional. We reject these arguments. Appellant Michel contends that he was improperly arraigned and tried in his absence. We agree. Accordingly, the convictions are affirmed with the exception of Michel.

## FACTS AND PROCEEDINGS BELOW

Appellants are members of an organization whose goal was the passage of the California Marijuana Initiative. Appellant Herer is founder and leader of the group.

On November 6, 1981 Herer and associates set up a table on the corner of federal building property in west Los Angeles. The group sought to collect petition signatures in support of the initiative, distribute information and register voters. The location was selected because of pedestrian traffic and proximity to a busy entertainment center, commercial area and the U.C. L.A. campus. The group announced its intention to occupy the area continuously for seventeen days. Along with the table appellants brought display signs, sleeping bags, blankets and various boxes.

On the first night of the group's activities, a Federal Protective Service officer informed Herer that the property was closed. Herer was asked to leave the property. When he refused, Herer was cited for being on government property after normal working hours.

On November 10, 1981 at approximately 6:00 p.m. another Federal Protective Service officer approached the table and requested that all depart the area. The request was repeated an hour later. Most people complied. Those remaining at the table were cited.

Arraignment was scheduled immediately before trial. Defendant Michel was not present. The court questioned Michel's attorney on his client's whereabouts. When no one could account for Michel's absence, the court suggested that it was appropriate to proceed under Fed.R.Crim.P. 43. Michel's counsel did not object.

The trial proceeded on the limited factual issue of the meaning of the phrase "normal working hours". The government called witnesses to establish the complex's normal working hours. No witnesses were called by the defense.

## ISSUES

1. Was the charging information vague and indefinite?
2. Were appellants selectively prosecuted?
3. Is the regulation unconstitutional?
4. Was there sufficient evidence to establish every element of the crime beyond a reasonable doubt?

ative of the Federal Protective Service Division responsible for protection of the facility or the area. This requirement does not preempt the authority of the Regional Director, Federal Protective Service Division, or any other authorized GSA official to effect a security alert of a facility in accordance with GSA Order, Physical Security of Buildings Alert Guidelines (PBS 5930.16), dated February 20, 1976. This action shall be coordinated with the designated official. The designated official is defined in § 101–20.204–3(f) as the highest ranking official of the primary occupant agency, or the alternate highest ranking official or designee selected by mutual agreement by other occupant agency officials. When property, or a portion thereof, is closed to the public, admission to this property, or a portion, will be restricted to authorized persons who shall register upon entry to the property and shall, when requested, display Government or other identifying credentials to the Federal Protective Officers or other authorized individuals when entering, leaving, or while on the property. Failure to comply with any of the above applicable provisions is a violation of these regulations. § 101–20.315 Penalties and other laws

Whoever shall be found guilty of violating any rule or regulation in this Subpart 101–20.3 while on any property under the charge and control of GSA is subject to a fine of not more than $50 or imprisonment of not more than 30 days, or both. (See 40 U.S.C. 318c.) Nothing in these rules and regulations shall be construed to abrogate any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated.

5. As to appellant Michel, was there constitutionally inadequate assistance of counsel and did the district court err in proceeding through arraignment and trial in Michel's absence?

## DISCUSSION

### 1. *Insufficient Information*

Appellants argue that the charging information was insufficient because it (1) failed to state one element of the criminal offense and (2) lacked factual particularity and was overly vague and indefinite. Our review is *de novo. United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982); *United States v. Bohonus,* 628 F.2d 1167, 1173 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980).

■ Appellants argue that while they are charged with "presence" at the federal property, the regulation forbids only "entry upon".[2] Appellants reason that once a person has legally "entered" the property, remaining after hours is not impermissible under the terms of the regulation. The district court rejected this distinction. We agree.

■ The Supreme Court in *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962), held that a legally sufficient indictment must state the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against. An indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied. *United States v. Anderson,* 532 F.2d 1218, 1222 (9th Cir.1976).

■ An indictment may be insufficient if it fails to allege an essential element of the offense. *United States v. Keith,* 605 F.2d 462, 464 (9th Cir.1979) (insufficient even though it tracked the language of the statute). Nonetheless, "[c]onvictions are no longer reversed because of minor and technical deficiencies which did not prejudice

the accused." *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041 (1959). Appellants' argument that a person may legally remain on federal·property after hours as long as that person arrives beforehand is without merit.

Appellants contend that the information was fatally flawed because it lacked specificity and was vague and indefinite. The information failed to specify the exact times of the trespass or what times are included in the phrase "normal working hours".

■ Fed.R.Crim.P. 7 mandates that an indictment be a "plain, concise and definitive written statement of the essential facts constituting the offense charged." The instrument must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the elements of the specific offense. *Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974); *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir.1979). In construing the language of the indictment courts must be guided by common sense and practicality. *Anderson,* 532 F.2d at 1222.

■ The information charged appellants with being present on federal property after normal working hours. Times were not specified in the information. Nor did the information specify the "normal working hours" of the federal facility. Nonetheless, such information is not necessary if the appellants were sufficiently informed of the charges against them. *E.g., United States v. Inryco, Inc.,* 642 F.2d 290, 294 (9th Cir. 1981) (interpretation of the indictment cannot ignore the plain language and inferences drawn therefrom). There is no indication that appellants were not fully aware of the nature of the charges against them. Nothing suggests that "normal working hours" means anything so unusual that appellants would have to guess its meaning.

---

2. The phrase "entry upon" does not appear in the 1981 amended regulation. See n. 1 *supra.*

Nevertheless, since the issue was fully briefed on appeal, we address it.

## 2. Selective Prosecution

Herer argues that the government impermissibly cited him because he was a vocal leader of the organization. The remaining appellants argue that they were impermissibly selected because of their petitioning activities, while other trespassers were not cited. The district court's denial of the motion to dismiss for selective prosecution is reviewed under the clearly erroneous standard. *United States v. Wilson,* 639 F.2d 500, 503 (9th Cir.1981).

The promise of equal protection of the laws necessarily extends to their application. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349 (9th Cir.1982). A defendant cannot stand convicted if there is unconstitutional discrimination in the administration of the penal statute. *United States v. Steele,* 461 F.2d 1148, 1151 (9th Cir.1972). Mere selectivity in prosecution, however, creates no constitutional problem. *E.g., Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). The impermissible selection must be shown to be based on an unjustifiable standard such as the exercise of the first amendment right of free speech. *United States v. Choate,* 619 F.2d 21, 23 (9th Cir.1980); *United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976).

The burden of proof falls on the defendants. *Choate,* 619 F.2d at 23. They must show that (1) others were not prosecuted for the same conduct, and (2) the decision to prosecute was based upon impermissible grounds. *Wilson,* 639 F.2d at 503.

Appellants' burden requires them to overcome the presumption that the prosecution was undertaken in good faith and in a nondiscriminatory fashion. *United States v. Falk,* 479 F.2d 616, 620 (7th Cir.1963) (*en banc*). The government advanced several reasons for the prosecution. While admitting that others were trespassing, the government distinguishes those individuals who were simply passing through the grounds and not camping there. Further, the government argued below that the group may have been responsible for human waste found on the grounds. Concern was expressed over noise and security on the grounds.

The district court found that appellants failed to meet their burden. Given the several plausible grounds for prosecution advanced by the government, we cannot say that the district court's findings are clearly erroneous.

## 3. Constitutionality

Appellants argue that (1) the regulation is unconstitutionally vague on its face; (2) the regulation, even if facially valid, is unconstitutional as applied to them; and (3) the imposition of a permit requirement is an impermissible prior restraint. The district court rejected each argument. Our review is *de novo. Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 849 (9th Cir.1982); *Rosen v. Port of Portland,* 641 F.2d 1243 (9th Cir.1981).

### a. Vagueness

The standard for vagueness is whether "citizens who desire to obey the [regulation] will have no difficulty in understanding it...." *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972); *Kannisto v. City and County of San Francisco,* 541 F.2d 841, 845 (9th Cir.1976). The language must sufficiently convey the proscribed conduct when measured by common understanding and practices. *Jordan v. De George,* 341 U.S. 223, 231, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951) (non-criminal statute).

Appellants contend that the regulation does not contain clearly defined prohibitions or specify a standard of conduct. For example, appellants argue that the phrase "entry upon property" does not give explicit warning that an individual's presence on the grassy area in the corner of the federal complex falls within the scope of

the regulation.[3] Appellants also attack the imprecise meaning of the phrase "normal working hours".

In *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), the court was called upon to decide, *inter alia,* whether a statute that prohibited demonstrations "near" courthouses was unconstitutionally vague. While the Court found that there was some lack of specificity in the statute, that alone did not render the statute void. *Id.* at 568, 85 S.Ct. at 482. Similarly in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Court reviewed an anti-noise ordinance. The Court held that the ordinance was not vague for it prohibited a specific activity (noise making) at fixed times (during school hours) and at a sufficiently fixed location (adjacent to a school). While the Court did express concern over the imprecision of the phrase "tends to disturb," the Court concluded that even that language gave fair notice to those who might violate it. *Id.* at 112, 92 S.Ct. at 2301. *See also Cameron v. Johnson,* 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (ordinance prohibiting picketing "in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from" any courthouse upheld against vagueness challenge). Measured against the *Cox* and *Grayned* standards, the regulation here is not unconstitutionally vague.

### b. Overbreadth

■ A clear and concise regulation may be overbroad if it prohibits constitutionally protected activity. *Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302. Distribution of literature is a form of protected communication. *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938); *Rosen v. City of Portland,* 641 F.2d

1243, 1245 (9th Cir.1981). Similarly, gathering signatures on petitions is a protected activity. *E.g., Glines v. Wade,* 586 F.2d 675 (9th Cir.1978) (regulation restricting signature gathering within military base was unconstitutionally overbroad).

■ Nevertheless, the first amendment does not prohibit all regulation of expressive activity. Restrictions on time, place and manner of exercise may be proper. *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Tacynec v. City of Philadelphia,* 687 F.2d 793, 797 (3d Cir.1982). Such restrictions must bear a "substantial relation" to a "weighty governmental interest". They must be no greater than necessary for the protection of the governmental interest. *Taxpayers for Vincent v. Member of City Council,* 682 F.2d 847, 849 (9th Cir.1982) citing *Rosen,* 641 F.2d at 1246.

The nature of a place and the pattern of its normal activities dictate the kind of regulations that are reasonable. *Grayned,* 408 U.S. at 116, 92 S.Ct. at 2303. A vigil that does not unduly interfere with a public library, *Brown v. Louisiana,* 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), may be unlawful when conducted on the jailhouse door. *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). "The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned,* 408 U.S. at 116, 92 S.Ct. at 2303; *Knights of KKK v. East Baton Rouge,* 578 F.2d 1122, 1124 (5th Cir. 1978).[4]

■ The government contends that the regulation validly restricts the time, place, and manner of use of the property. It offered several justifications for enforcement of the regulation. First, restriction of

---

**3.** See n. 2 *supra.*

**4.** The government may, of course, set aside certain of its property for purposes inconsistent with its use as a public forum. *E.g., Connecticut S. Fed. of Tchrs. v. Board of Ed. Members,* 538 F.2d 471 (2d Cir.1976) (school board's restrictions on use of school mail boxes, bulletin boards, and meeting rooms valid). Further, the Constitution does not forbid the government from restricting the use of its property in nondiscriminatory ways. *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (trespass convictions affirmed on non-public jail driveway).

unauthorized individuals is necessary for security. Second, the adjacent community is entitled to quiet enjoyment of its environs. Third, trespassers have no access to restroom facilities.

Regulations of time, place and manner of protected speech are upheld when necessary to further significant governmental interest. *E.g., Ellwest Stereo Theatres, Inv. v. Wenner*, 681 F.2d 1243 (9th Cir.1982) (upholding ordinance regulating "video centers"); *Carlson v. Schlesinger*, 511 F.2d 1327 (D.C.Cir.1975) (upholding prohibition on petitioning on military bases in Viet Nam); *Callison v. United States*, 413 F.2d 133 (9th Cir.1969) (upholding arrest for distributing petitions at military induction center). We agree with the district court that the asserted governmental interests are sufficient to support the restrictions created by the regulation.

### c. Prior Restraint

■ Appellants argue that the imposition of a permit requirement is an unconstitutional prior restraint. Any law which imposes a prior restraint on the exercise of first amendment rights comes to court "with a heavy presumption against its constitutional validity." *Rosen*, 641 F.2d at 1246–47 (citing *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413 (1980)). The presumption is great because the prior restraint of protected activity is "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1975).

Even where it has been generally recognized that speech may be regulated, permit regulations are often condemned because they improperly vest in an administrative official discretion to grant or withhold a permit based upon broad criteria unrelated to proper regulation. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162; *Kunz v. New York*, 340 U.S. 290, 293–94, 71 S.Ct. 312, 314–15, 95 L.Ed. 280 (1951). Thus, advance registration as a condition of peaceful pamphleteering at a public airport is unconstitutional. *Rosen*, 641 F.2d at 1243. Similarly, the delegation of authority to a single person to determine who may use hospital grounds for free speech purposes violates the Constitution. *Dallas Ass'n Etc. v. Dallas County Hospital District*, 670 F.2d 629 (5th Cir. 1982). Even a regulation allowing a park director to issue overnight camping permits was unconstitutional since the regulation contained no definite standards to guide the licensing authority. *United States v. Abney*, 534 F.2d 984 (D.C.Cir.1976).

The government argues here that the licensing requirement is narrow, objective and contains definite standards. We agree. 41 C.F.R. § 101–20.703 (1981)[5] specifies

---

**5.** § 101–20.703 Disapproval of application or cancellation of permit.

(a) *Grounds for disapproval or cancellation.* The buildings manager shall disapprove any application or cancel an issued permit for use of a public area if the proposed use:

(1) Is a commercial activity as defined in § 101–20.701(k);

(2) Obstructs the free ingress and egress of the users of the public area;

(3) Damages the public building or any property within the public building;

(4) Disrupts the official business of the agency or agencies occupying the public buildings;

(5) Interferes with a tenant's quiet enjoyment of their leasehold;

(6) Interferes with a previously approved use of the public area by another member, or members, of the public;

(7) Is obscene within the meaning of obscenity in 18 U.S.C. 1461–65;

(8) Pertains to any judicial proceeding then pending in the public building and this use is intended to influence or impede the judicial proceeding;

(9) Is in violation of the prohibition against political solicitations in 18 U.S.C. 603; or

(10) Is being conducted with a permit issued in response to an intentionally false or incomplete application.

(b) *Notice of disapproval of application or cancellation of permit.* Upon disapproving an application or canceling an issued permit for any of the above reasons, the buildings manager shall:

(1) Notify promptly the applicant or permittee in writing of disapproval or cancellation and the reasons for this action; and

(2) Inform the applicant of his or her right to appeal the disapproval or cancellation to the regional officer under § 101–20.704.

grounds for the disapproval of an application for a permit. The regulation is not deficient for inadequate safeguards or for allowing unfettered discretion to vest in one official. The permit regulations are drawn with adequate specificity.

### 4. Insufficiency of the Evidence

 Appellants argue that the government failed to prove that they were present on the property after "normal working hours". We examine the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found this essential element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. DeRosa,* 670 F.2d 889, 892–93 (9th Cir.1982).

The trial focused exclusively on the meaning of the phrase "normal working hours". The government, through its witnesses, a field office manager and an officer of the Federal Protective Service, established the normal working hours. Reviewing the evidence in a light most favorable to the government, this element was sufficiently proved.

Herer argues that the government failed to introduce evidence of the time of his trespass. He stipulated below, however, that he was present on the property at 10:00 p.m.

### 5. Appellant Michel

Michel argues that he was (1) deprived of competent counsel and (2) improperly found to have waived his right to be present at arraignment and trial.

### a. Incompetence of Counsel

 The sixth amendment requires persons accused of crimes to be represented by reasonably competent and effective counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); *United States v. Gibson,* 690 F.2d 697, 703–04 (9th Cir.1982). We review the record to determine whether defense counsel's alleged errors or omissions reflected a failure to exercise the skill, judgment or diligence of a reasonably competent criminal defense attorney. *United States v. Sanford,* 673 F.2d 1070, 1073 (9th Cir.1982); *Cooper v. Fitzharris,* 586 F.2d 1325, 1330 (9th Cir.1978) (*en banc*), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). Mere error is not enough. There must be a serious dereliction, *Cooper,* 586 F.2d at 1330, and the defendant bears the burden of proving that he was prejudiced by it. *United States v. Winston,* 613 F.2d 221, 223 (9th Cir.1980). Thus our analysis is two-pronged: (1) whether the claim of ineffective assistance is founded upon a specific act or omission of defense counsel at trial and (2) whether the accused can establish that counsel's error prejudiced the defense. *Ewing v. Williams,* 596 F.2d 391, 394 (9th Cir.1979).

 Michel argues that defense counsel was ineffective because he failed to object to the district court's decision to proceed with trial in Michel's absence. While this may be a significant omission, Michel failed to show how his defense was prejudiced. The short trial addressed only one issue—the normal working hours at the federal building complex. Only two witnesses appeared for the government, and none appeared for the defense. We reject Michel's claim since he failed to meet his burden of proof. *See Gibson,* 690 F.2d at 704; *Hall v. Sumner,* 682 F.2d 786, 789 (9th Cir.1982).

### b. Waiver of Presence

 A defendant is generally required to be present during all stages of the criminal process. Fed.R.Crim.P. 43.[6] The pro-

---

**6.** Rule 43. Presence of the Defendant

(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have

tection is broader than the sixth amendment right to confrontation and the fifth amendment due process rights. *United States v. Alessandrello,* 637 F.2d 131, 138 (3d Cir.1980). Nevertheless, due process does not assure the right of presence if such presence "would be useless, or the benefit but a shadow". *Polizzi v. United States,* ·550 F.2d 1133, 1138 (9th Cir.1976), *quoting Snyder v. Massachusetts,* 54 S.Ct. 330, 333, 78 L.Ed. 674, 291 U.S. 97, 107 (1932).

■ The decision to arraign Michel in his absence cannot be squared with the language of Rule 43. The rule makes no provision for arraignment in the defendant's absence except with the defendant's written consent. No such consent was given. Further, the error is not harmless. "[N]o defendant can be tried until after he personally has entered a plea to the charge." *United States v. Tortora,* 464 F.2d 1202, 1209 (2d Cir.1972). Because waiver of the right to attend trial must be voluntary, a judge must find that the defendant had adequate notice of the charges and proceedings against him. "But not until the defendant answers the indictment by pleading in open court ... can a court know with certainty that the defendant has been apprised of the proceedings ... against him." *Id.* at 1209. Accordingly, Michel's conviction is vacated.

## CONCLUSION

Appellants challenge the sufficiency of the charging information. The information is not insufficient nor flawed by lack of specificity or vagueness.

Appellants contend that they were impermissibly selected for prosecution. The burden of proving such a defense is on the defendants. The district court's finding that the burden was not met is not clearly erroneous.

The regulation is not vague and therefore not facially invalid. Proffered government interests are sufficient to uphold the regulation. The regulation is not void as a prior restraint of free speech because the permit process is specific and does not vest unfettered discretion in the decision maker.

There was sufficient evidence for a reasonable trier of fact to conclude that each element of the crime was proved beyond a reasonable doubt.

Finally, as to appellant Michel, the claim of incompetent counsel must fail. Arraignment *absente reo,* however, was improper.

AFFIRMED IN PART AND REVERSED IN PART.

---

waived his right to be present whenever a defendant, initially present,

(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial), or

(2) after being warned by the court that disruptive conduct will cause him to be removed from the courtroom, persists in conduct which is such as to justify his being excluded from the courtroom.

(c) Presence Not Required. A defendant need not be present in the following situations:

(1) A corporation may appear by counsel for all purposes.

(2) In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial, and imposition of sentence in the defendant's absence.

(3) At a conference or argument upon a question of law.

(4) At a reduction of sentence under Rule 35.