974 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Russell YEOMANS, Defendant-Appellant.
 No. 91-30174.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1992.
Decided Sept. 3, 1992.
 
 1
 Appeal from the United States District Court for the District of Oregon, No. CV 90-60069-REJ; Robert E. Jones, District Judge, Presiding.
 
 
 2
 D.Or.
 
 
 3
 AFFIRMED.
 
 
 4
 Before WALLACE, Chief Judge, GOODWIN, Circuit Judge, and CROCKER,* District Judge.
 
 
 5
 MEMORANDUM**
 
 
 6
 Thomas Yeomans appeals his conviction by a jury of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 7
 * The district court's denial of a motion to dismiss is reviewed for clear error as to the district court's factual findings [ United States v. Christopher, 700 F.2d 1253, 1258 (9th Cir.), cert. denied, 461 U.S. 960 (1983) ]; however, the legal basis for the decision is reviewed de novo. United States v. Gatto, 763 F.2d 1040, 1045 (9th Cir.1985).
 
 
 8
 An indictment is sufficient if it states the elements of the offense charged, fairly informs a defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1973); United States v. Johnson, 804 F.2d 1078, 1082 (9th Cir.1986).
 
 
 9
 Yeomans argues that the substitution of "other known and unknown co-conspirators" for the named co-conspirators rendered the indictment impermissibly vague, and that the scope of the conspiracy charged was increased by the addition of unlawful distribution as an objective of the conspiracy.
 
 
 10
 At the pretrial conference on February 11, 1990, the government stated that the evidence to be presented in connection with the second superseding indictment would be the same as that set out at the hearing on February 8th in connection with the prior indictment, that is, in addition to testimony by the law enforcement officers, Orcutt and Gerrior would testify that they assisted Yeomans in manufacturing the drug and that they subsequently washed and packaged the lab apparatus for storage; other previously identified witnesses would testify that they purchased drugs from Yeomans and about the chemical smell in Yeomans' house, and that Yeomans had been seen with the Ungers in Alvadore, Oregon manufacturing drugs. Defense counsel conceded that the same evidence and the same witnesses were involved under both the superseding indictment and the second superseding indictment, but argued that the addition of distribution as an object of the conspiracy did put a somewhat different complexion on the manner in which the case would be handled.
 
 
 11
 Although the known co-conspirators are not specifically named, Yeomans knew the names of all of the witnesses and the substance of their testimony. Likewise, no new or different evidence was being offered in connection with the addition of distribution as an object of the conspiracy.
 
 
 12
 The second superseding indictment is not impermissibly vague. It sets out the purpose of the conspiracy, cites the statutes allegedly violated, gives the location and approximate dates of the conspiratorial activities, and states that Yeomans conspired with co-conspirators known and unknown. This information is sufficient for Appellant to be able to defend himself, and to plead double jeopardy against a later prosecution. Any prejudice which might have arisen because of the differences between the prior and second superseding indictment was negated when the court granted the defendant a 30-day extension.
 
 
 13
 The cases cited by Appellant in support of this argument are not helpful, as those cases deal with evidence required to show a connection to an alleged conspiracy or the elements necessary to sustain a conviction for conspiracy, not with the sufficiency of the charging document. See, e.g., U.S. v. Penagos, 823 F.2d 346 (9th Cir.1987); U.S. v. Torres-Rodriguez, 930 F.2d 1375, 1386 (9th Cir.1991).
 
 II
 
 14
 Appellant challenged the sufficiency of the second superseding indictment by filing both a motion to dismiss and a motion for a bill of particulars. A bill of particulars is appropriate if the indictment is not sufficiently precise to enable a defendant to defend himself or to avoid unfair surprise. We review the denial of a motion for a bill of particulars for abuse of discretion. United States v. Calabrese, 825 F.2d 1342, 1347 (9th Cir.1987).
 
 
 15
 Appellant contends that because the indictment failed to specify the names of the co-conspirators, impermissible evidence was presented, and the government was relieved from having to prove a conspiracy. Appellant does not indicate what impermissible evidence was presented, nor does he support his argument with any authority or facts showing that failure to name specific co-conspirators in some way relieved the government from the burden of proving the existence of a conspiracy at trial.
 
 
 16
 The stated reason for seeking a bill of particulars here was to require the government to name specific co-conspirators. Due to the fact that the government's witnesses and their expected testimony as well as the list of exhibits remained unchanged whether the trial proceeded under the prior or second superseding indictment, it is clear that the Appellant was not subjected to unfair surprise and had sufficient information to defend himself. In view of the ruling with regard to the motion to dismiss which was filed by Yeomans for the same purpose, it was not an abuse of discretion for the district court to hold that the motion for a bill of particulars was moot.
 
 III
 
 17
 After Yeomans requested discovery of material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the government submitted a number of documents which the district court examined in camera for exculpatory statements or information useful for impeachment of government witnesses, particularly Orcutt and Gerrior.
 
 
 18
 After reviewing the materials, the court denied Yeomans' request for disclosure of these materials, holding that the great majority of the materials submitted for in camera review were either cumulative of information previously provided to Yeomans or were irrelevant. The court stated, in particular, that the tape recording transcript of a debriefing of Barbara Gerrior detailed many activities over a long period of time, involved many other investigations and persons not relevant in the instant case. The court found that Yeomans was already in possession of sufficient information to show Gerrior's deep involvement in illegal drug operations and her bias, and thus determined that even if some of the information were relevant, which the court did not concede, the probative value of the information was out-weighed by the prejudicial effect to the government, and would be a waste of time as it involved many irrelevant collateral matters. A similar finding was made as to the information provided with regard to Mr. Orcutt. The court stated that Yeomans had already received most of the information previously, and determined that the fragmentary hand notes and transcript reviewed contained no potential Brady materials.
 
 
 19
 Finally, the court satisfied itself that the government had provided all materials which might contain potential Brady materials after reviewing the materials and discussion with counsel.
 
 
 20
 We review of denial of a motion for Brady material de novo. United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991).
 
 
 21
 Appellant had previously received copies of interviews with Gerrior and Orcutt and other records in connection with the search conducted at Yeomans' residence. At the Brady hearing, Appellant sought additional information which would demonstrate Gerrior and Orcutt's involvement in criminal activities for impeachment purposes, and to show a contrast between the sentence they were exposed to for those activities and the sentence they would receive because of the plea agreement with the government. The district court determined that the information previously supplied provided ample information to show the bias of both Gerrior and Orcutt, that they both had been involved in the drug scene for a number of years, and that they would have been subjected to a substantial increase in their sentences absent the plea agreement with the government.
 
 
 22
 This court has examined the sealed documents which were reviewed in camera by the district court. The materials contained therein are primarily cumulative of information previously disclosed to Yeomans or irrelevant. The district court's finding that the probative value of the small amount of information that was relevant was far outweighed by the prejudicial effect and waste of time delving into collateral matters is correct. Yeomans was in possession of ample information for impeachment of both Orcutt and Gerrior, and the record reveals both witnesses were extensively cross-examined on the basis of their backgrounds and their agreement to cooperate with the government.
 
 
 23
 Thus, we find no Brady error. Even assuming arguendo that a Brady violation is present, Brady requires disclosure of evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. United States v. Bagley, 473 U.S. 667, 675 (1985). The materials reviewed do not contain any further exculpatory materials. They do contain information for impeachment purposes, however, that information is primarily cumulative of information previously disclosed to Yeomans. Because the suppression of the materials submitted in camera does not undermine confidence in the outcome of the trial, the materials denied to Yeomans do not meet the materiality requirements of Brady. Id at 677.
 
 IV
 
 24
 We review the district court's findings of fact and determinations of credibility for clear error. United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988). The ultimate legal conclusions of probable cause and exigent circumstances to support a search are reviewed de novo. U.S. v. George, 883 F.2d 1407, 1411 (9th Cir.1989).
 
 
 25
 Appellant argues that the motion to suppress should have been granted because there were no exigent circumstances justifying the executing officers' failure to knock and announce before entering to search, as required by 18 U.S.C. § 3109.
 
 
 26
 An exception to the knock and announce requirement is provided when exigent circumstances justify noncompliance. In U.S. v. Turner, 926 F.2d 883, 886 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 103 (1991), the court held that a police officer's reasonable belief that announcement might place him or his associates in physical peril represents exigent circumstances. The court reviews the finding of exigent circumstances de novo. Id. See also United States v. Ramirez, 770 F.2d 1458, 1460 (9th Cir.1985).
 
 
 27
 The court found exigent circumstances based upon Appellant's known criminal history, the fact that the search was being conducted at a suspected methamphetamine lab, and in the experience of seasoned officers, both firearms and violence are frequently associated with such operations. Further, the officers were aware that Appellant had prior ties with an outlaw motorcycle club known as Free Souls.
 
 
 28
 Although Appellant contends that some of the information relied upon by the court was stale or incorrect, there was still sufficient reliable information known to the officer executing the warrant to support a reasonable belief that the officers or others might be in danger. Under the circumstances of this case, the district court did not err in finding exigent circumstances justifying entry without complying with the knock and announce requirements of 18 U.S.C. § 3109.
 
 
 29
 Appellant also argues it was error for the court to find the unsigned search warrant was valid. The warrant must be upon sworn affidavit before a magistrate. Fed.R.Crim.P. 41(c)(1). The court here determined that the affidavit was made under oath, and that failure to sign the affidavit was an oversight. Thus, suppression was not required.
 
 
 30
 Technical violations of Rule 41 do not require suppression of evidence otherwise legally obtained. United States v. Ritter, 752 F.2d 435, 441 (9th Cir.1985); United States v. Turner, 926 F.2d at 886. The warrant was valid and it was not error to so hold.
 
 V
 
 31
 Denial of a motion for judgment of acquittal because of insufficiency of the evidence is reviewed in the light most favorable to the government to determine whether there is substantial relevant evidence upon which the jury could have found the defendant guilty beyond a reasonable doubt. U.S. v. Terry, 911 F.2d 272, 278 (9th Cir.1990).
 
 
 32
 The grant or denial of a motion for a new trial is within the sound discretion of the trial court, [ United States v. Lopez, 803 F.2d 969, 976 (9th Cir.1986), cert. denied, 481 U.S. 1030 (1987) ], and the appellant carries a significant burden to show abuse [ United States v. Shaffer, 789 F.2d 682, 687 (9th Cir.1986) ].
 
 
 33
 Appellant extensively sets out the testimony at trial and alleges that the evidence does not show that a conspiracy existed or that Appellant conspired with Orcutt or Gerrior to manufacture methamphetamine.
 
 
 34
 Viewing the evidence in the light most favorable to the government, a reasonable jury could have found that Appellant conspired with Orcutt and Gerrior to manufacture and distribute methamphetamine through their close relationship and cooperation. Orcutt testified that he had seen and assisted Appellant in manufacturing methamphetamine at the Appellant's residence. He testified that he kept a watch on things, cleaned the glassware, put it away. Appellant also told Orcutt that his kitchen ceiling was damaged when a reaction blew up.
 
 
 35
 Gerrior testified that Yeomans provided her with methamphetamine and that she and Orcutt washed and packaged the glassware found in the shed. Further, she testified that the equipment used in the lab at the site had come from the Ungers in Alvadore, Oregon where she had seen Yeomans and the Ungers scraping methamphetamine off plates as it dried. Gerrior also testified that Yeomans told her that the damage to his kitchen ceiling was due to a blow up during a reaction. She testified that she saw Orcutt and Yeomans running some sludge to get methamphetamine, and afterwards observed them drying the product in Pyrex dishes.
 
 
 36
 Witness Theresa Nyjordit testified that on a number of occasions she brought customers to Appellant and he sold methamphetamine to them. Other witnesses testified that they bought methamphetamine at the Appellant's residence, and that the whole house smelled like methamphetamine.
 
 
 37
 The meth lab was found in the shed when the search warrant was executed. The keys to the padlock for the shed were found in Appellant's pants pocket. In a small camp trailer on the premises, a portion of the meth lab was set up and Gerrior was arrested inside the trailer.
 
 
 38
 Appellant testified, and denied any part in manufacturing the methamphetamine, seeing anyone else do so or even smelling it. He denied knowledge of the methamphetamine drying in Gerrior's camp trailer. He denied knowledge of what most of the keys found in his pants pocket were for. He denied knowledge of or any part in moving the glassware to his shed, and denied knowledge of what happened to the kitchen ceiling.
 
 
 39
 The above is only a part of the evidence established through testimony and physical evidence. Appellant's argument consists primarily of pointing out inconsistencies in the testimony of the various witnesses, and suggesting that the only reasonable inference to be drawn is an innocent one. However, the jury is presumed to have resolved the inconsistencies and conflicts in the evidence in favor of the verdict rendered.
 
 
 40
 Under all of the circumstances, it is clear there is substantial relevant evidence upon which the jury could have found the defendant guilty beyond a reasonable doubt.
 
 VI
 
 41
 When reviewing a case for sufficiency of the evidence, the appellate court must review the evidence in the light most favorable to the government to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). U.S. v. Gillock, 886 F.2d 220, 221 (9th Cir.1989).
 
 
 42
 Appellant argues that the government failed to prove a conspiracy or any connection between the defendant and a properly charged conspiracy. The argument is without merit.
 
 
 43
 Our review for sufficiency of the evidence is essentially the same as for the motions for a new trial or acquittal, and based upon the above recitation of the evidence, it is apparent that a rational trier of fact could conclude that Yeomans conspired with Gerrior and Orcutt to manufacture and distribute methamphetamine.
 
 VII
 
 44
 Ordinarily, a trial court's denial of a motion for continuance is reviewed for abuse of discretion. United States v. Torres-Rodriguez, 930 F.2d 1375 (9th Cir.1991). However, because this appeal addresses denial of Appellant's motion to continue for a psychiatric exam in connection with application of the Sentencing Guidelines, the matter is reviewed de novo. United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990); United States v. Restrepo, 903 F.2d 648, 651 (9th Cir.1990), reh'g. en banc, 946 F.2d 654 (1990), cert. denied, --- U.S. ----, 112 S.Ct. 1564 (1991).
 
 
 45
 Appellant contends that the court erred in denying his motion to continue sentencing for a psychiatric examination to obtain an expert's evaluation as to the likelihood of recidivism. Appellant argues that all of his prior convictions were drug related, and yet he had never obtained or received drug treatment, and a psychiatric examination would assist in determining whether he had violent or anti-social tendencies and was amenable to drug treatment. He argued that the circumstances present an atypical case which warranted psychiatric evaluation and expert opinion before final determination was made on whether or not the court should depart downward from the guideline sentencing range.
 
 
 46
 The district court did not agree that this is an atypical case, and found nothing in the record which demonstrated the presence of mental illness or any psychotic episode, determined that there was no need for a psychiatric examination prior to sentencing, and denied the motion for continuance.
 
 
 47
 The Sentencing Guidelines directly address the issue of downward departures based upon drug dependence. § 5H1.4 of The Sentencing Guidelines reads as follows:
 
 
 48
 Drug dependence ... is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program.
 
 
 49
 Thus, the district court correctly denied the motion for continuance for psychiatric examination in view of the record and the stated reasons for the motion.
 
 
 50
 Appellant also argues that denial of the continuance denied him an opportunity to present evidence that might affect the court's discretionary decision to depart downward from the Guidelines. This circuit has determined that a district court's discretionary decision not to depart downward from the applicable guidelines is not reviewable on appeal. U.S. v. Morales, 898 F.2d 99, 102 (9th Cir.1990); U.S. v. Sanchez, 914 F.2d 1355, 1363 (9th Cir.1990) [quoting from Morales, "a district court's discretionary decision not to depart downward from the guidelines is not subject to review on appeal."], cert. denied, --- U.S. ----, 111 S.Ct. 1626 (1991); U.S. v. Bos, 917 F.2d 1178, 1180 (9th Cir.1990); U.S. v. Reed, 914 F.2d 1288, 1290 (9th Cir.1990). "Moreover, the extent to which a district court chooses to exercise its discretion in fixing a downward departure is also not reviewable on appeal." U.S. v. Dickey, 924 F.2d 836, 838 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 383 (1991), citing U.S. v. Vizcarra-Angulo, 904 F.2d 22, 23 (9th Cir.1990).
 
 
 51
 The court was aware of Appellant's position, properly addressed his arguments and determined that there was no basis for granting a continuance for a psychiatric examination prior to sentencing, and the court's underlying decision not to depart is not reviewable.
 
 
 52
 The judgment is AFFIRMED.
 
 
 
 *
 Honorable Myron D. Crocker, Senior United States District Judge, Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3