132 F.3d 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David Charles SLY, Petitioner-Appellant,
v.
Ron ANGELONE, Respondent-Appellee.
 No. 96-17044.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1997.**
Decided Nov. 6, 1997.
 
 Appeal from the United States District Court for the District of Nevada Philip M. Pro, District Judge, Presiding
 Before: HUG, Chief Judge, PREGERSON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nevada state prisoner David Charles Sly appeals pro se the district court's denial of his second 28 U.S.C. § 2254 habeas petition challenging his conviction for second-degree murder. We affirm.
 
 
 3
 * Sly first contends that the evidence adduced at trial was insufficient to support his second-degree murder conviction.[1] There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Ross, 123 F.3d 1181, 1184 (9th Cir.1997). The evidence presented at Sly's trial, construed in the light most favorable to the government, is sufficient to support his conviction.
 
 
 4
 An emergency room nurse who observed the child when she arrived at the hospital and spoke with Sly and Tammy Eckardt testified about inconsistent explanations Sly provided concerning how the child had been injured. Sly first stated that he found the child sitting and looking dazed. [SER, Exh. A, pp. 376-77]. A short time later, Sly told the nurse that he found the child unconscious and unresponsive in a room containing a weight bench and weights and "volunteered" that a weight bench or weights had fallen on her chest. [SER, Exh. A, pp. 377-78]. After x-rays of the child's chest revealed no injuries and the nurse informed Sly about seeing something on the child's head, Sly explained that the child may have hit her head when she fell from the weight bench. [SER, Exh. A, p. 379].
 
 
 5
 Gwen Reiger, an acquaintance of Sly, testified that she heard Sly yelling when she arrived at his house on the morning the child was injured and observed Sly knocking the child in the head with a tether ball. [SER, Exh. A, pp. 232-36].
 
 
 6
 The jurors also heard five experts testify. Dr. John Carlile, who had examined the child in the emergency room, testified that the child's death resulted from a traumatic injury. [SER, Exh. A, p. 118]. Dr. Carlile explained that the child's injuries were consistent with child abuse and stated his opinion that the child was either thrown against something or hit with something. [SER, Exh. A, p. 118]. Dr. Nina Hollander, the Deputy Medical Examiner who performed an autopsy on the child, explained that the death was caused by blunt trauma and stated her opinion that the death was a homicide. Dr. Hollander did not find the injuries consistent with a weight bench or weights striking the child. [SER, Exh. A., 183-86]. Dr. Richard Krugman also stated his opinion, based on Sly's statements at the hospital, his delay in seeking treatment, and other surrounding circumstances, that the child's death was not accidental. [SER, Exh. A, 760-63].
 
 
 7
 The other two experts expressed no opinion as to whether the child's death was accidental or a homicide. Dr. George McClellan, a pathologist who testified for the defense, was unable to draw a conclusion as to what caused the fatal injuries but stated that fifty pound weights falling on the child could have caused the injuries. [SER, Exh. A, pp. 721, 732]. Finally, Dr. Thomas Gott, a neurological surgeon who operated on the child, testified that the child's injuries were not inconsistent with a falling weight bench or weights. [SER, Exh. A., p. 173-75].
 
 
 8
 The fact that there was no conclusive evidence of the manner of the child's death does not undermine the validity of Sly's second-degree murder conviction. "[C]ircumstantial evidence and inference drawn from it may be sufficient to sustain a conviction." United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992); see also United States v. Hernandez, 876 F.2d 774, 777-78 (9th Cir.1989). Nor does the failure of the expert witness to agree upon the manner of death render the evidence insufficient to support Sly's conviction. Although not every expert concluded that the death was caused by abuse, and the experts did not agree upon whether a falling weight bench or weights could conceivably have caused the death, all five experts testified that the child's death resulted from blunt trauma to the skull or a high velocity force to the skull. The jury's verdict was not inconsistent with any expert's testimony, and was directly supported by the testimony of at least three of the experts.
 
 
 9
 The jury properly exercised its responsibility to resolve any conflicts in the expert testimony, to weigh the evidence and the credibility of witnesses, and to draw reasonable inferences from all of the evidence. See Jackson, 443 U.S. at 319. This evidence included the expert testimony concerning the nature of the child's injuries, Gwen Reiger's eyewitness account of Sly striking the child, the fact that the child was in Sly's sole custody and care when the incident occurred, Sly's delay in seeking medical attention, and Sly's inconsistent stories after the incident. Based on all the evidence and reasonable inferences therefrom, a rational trier of fact could have found every essential element of the offense beyond a reasonable doubt. Thus, Sly's conviction of second-degree murder is supported by the evidence.
 
 II
 
 10
 Sly next contends that the allegations of the indictment failed to provide sufficient notice of the nature and cause of the offense charged against him, thus depriving him of his Fifth and Sixth Amendment rights. "An indictment must be a 'plain, concise and definitive written statement of the essential facts constituting the offense charged.' " United States v. Martin, 783 F.2d 1449, 1452 (9th Cir.1986) (quoting United States v. Christopher, 700 F.2d 1253, 1257 (9th Cir.1982)). "The instrument must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the elements of the specific offense." Id.
 
 
 11
 Sly's indictment offered a plain, concise, and definitive statement of the offense charged and underlying facts. It described the elements of the charge against Sly, the means by which Sly committed the offense, and where and when the crime occurred. The indictment thus sufficiently apprised Sly of the charges against him and was not unconstitutionally vague. See Martin, 783 F.2d at 1452.
 
 III
 
 12
 Sly's third claim of error concerns the admission of evidence about marijuana that Sly kept at his home and testimony about a leg fracture the child has suffered approximately one week before her fatal injury. On direct appeal, the Nevada Supreme Court held that Sly was procedurally barred from raising these alleged evidentiary errors because of his failure to object at trial. [SER Exh. B, p. 3].
 
 
 13
 Under Nevada law, failure to object in a timely manner to evidence offered at trial precludes a defendant from raising the issue on appeal. See Fish v. State, 549 P.2d 338, 341 (Nev.1976); Shepp v. State, 484 P.2d 563, 564 (Nev.1971). The making of motions in limine is not enough to preserve the trial court's alleged error on appeal. See Daly v. State, 665 P.2d 798, 801 (Nev.1983). Because the Nevada Supreme Court relied upon procedural default as an adequate and independent grounds for rejecting Sly's evidentiary claim, the district court properly found that it was procedurally barred from reviewing the claims in Sly's habeas proceeding. See Coleman v. Thompson, 501 U.S. 722, 729 (1991).[2]
 
 
 14
 Finally, Sly also challenges the state court's failure to provide jurors with an instruction limiting their use of the marijuana and prior fracture evidence. Sly die not raise this claim below and is thus precluded from raising it on appeal. See Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir.) (claim barred for failure to raise in federal habeas petition), cert. denied, 116 S.Ct. 980 (1996); United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991) ("Issues not presented to the trial court cannot generally be raised for the first time on appeal.").
 
 IV
 
 15
 Sly argues that comments regarding his silence were unconstitutionally admitted at trial. Specifically, Sly refers to a detective's response to a question at trial concerning whether he had personally spoken to Sly in which the detective indicated that he had attempted but been unable to speak to Sly. On direct appeal, the Nevada Supreme Court held that Sly was procedurally barred from raising his claim because of Sly's failure to object to the comment at trial. [EOR, Exh. C, p. 5]. As with Sly's evidentiary claims, the state court's reliance on the procedural bar as an adequate and independent state grounds precludes federal review, and Sly has established neither cause not prejudice to overcome the bar.
 
 V
 
 16
 The Nevada Supreme Court also addressed the final three claims that Sly raises in his habeas petition and held that the court was procedurally barred from considering the claims because of Sly's failure to file a timely appeal from his second state habeas petition. See Jordon v. Housewright, 696 P.2d 998, 999 (Nev.1985) (Nevada Supreme Court has no jurisdiction to hear an appeal when a party fails to file the notice of appeal within thirty days). The state court's reliance on the procedural bar as an adequate and independent state grounds precludes federal review, and Sly has again failed to establish either cause or prejudice to overcome the bar. See Coleman, 501 U.S. 729-32.
 
 
 17
 Sly argues that the district court should have considered the claims despite the procedural bar in light of this court's September 8, 1995, remand to the district court. This court, however, only addressed the district court's refusal to consider the merits of Sly's habeas petition on the ground that the petition was successive or abusive. Thus, the district court properly considered any procedural bars to Sly's claims after the remand.
 
 
 18
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Murder is defined as "the unlawful killing of a human being, with malice aforethought, either express of implied." N.R.S. 200.010. Murder of the second degree is all murder other than first degree murder. N.R.S. 200.030
 
 
 [2]
 A federal habeas petitioner who was procedurally barred from raising his federal claims in a state court can nonetheless obtain review of those claims in federal court only if he can demonstrate cause for procedural default and actual prejudice attributable thereto. See Murray v. Carrier, 477 U.S. 478, 485 (1986). Sly has not raised or established any cause for the failure to object at trial, nor has be established actual prejudice stemming from the alleged evidentiary errors
 Sly also claims that the court erred in allowing a witness to testify that her ex-husband "was locked up with" Sly, thus implying a prior criminal record, and in allowing a detective to testify that a witness had seen Sly engage in abusive conduct toward children on prior occasions. These prior bad act claims also fall within the procedural bar. See Coleman, 501 U.S. at 729. Even to the extent that these claims fall outside of the procedural bar because of the Nevada Supreme Court's failure to address them apart from the other prior bad acts evidence, it does not appear that the alleged errors "has a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).