UNITED STATES of America, Appellee,

v.

Mark **REITER,** Raymond **Clark,** a/k/a "Romar", Leonard **Rollack,** a/k/a "Petey", a/k/a "Peter Rollack", a/k/a "Peter Ifill", Alfred **Dicks,** and Timothy **Smith,** a/k/a "Heartbeat", Defendants–Appellants.

Nos. 31, 32, 129, 276 and 413, Dockets 88–1493, 88–1494, 88–1500, 88–1501 and 89–1226.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1989.

Decided Feb. 26, 1990.

See also, 2d Cir., 848 F.2d 336.

Richard E. Mischel (Richard E. Mischel, P.C., New York City, of counsel), for defendant-appellant Reiter.

Paul J. McCallister (Kenny, McAllister & Roland, New York City, of counsel), for defendant-appellant Clark.

Douglas L. Thomas, Hempstead, N.Y., for defendant-appellant Rollack.

Edward M. Chikofsky, New York City, for defendant-appellant Dicks.

James A. Cohen, New York City, for defendant-appellant Smith.

Robert Hammel, Asst. U.S. Atty., S.D. N.Y., (Benito Romano, U.S. Atty., S.D. N.Y., Maria T. Galeno, Robert W. Ray, Andrew E. Tomback, Kerri Martin Bartlett, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before PRATT and MINER, Circuit Judges.[*]

GEORGE C. PRATT, Circuit Judge:

Defendants Mark Reiter, Raymond Clark, Leonard Rollack, Alfred Dicks, and Timothy Smith appeal from judgments of conviction entered against them in the United States District Court for the Southern District of New York, Richard Owen, Judge, in connection with their participation in and conspiracy to participate in a racketeering enterprise organized principally to distribute heroin.

Following a four-month trial, the jury found each defendant guilty of every count and every predicate act of racketeering activity submitted to the jury in which that defendant was named. Each defendant now raises numerous issues for review. We affirm in all respects the convictions of Reiter, Clark, Dicks, and Smith. For the reasons set forth below, however, we reverse Rollack's conviction and remand for new trial.

## I. BACKGROUND

Defendants were tried on a thirteen-count twelfth superseding indictment, (12S) 87 Cr. 132 (the 12S indictment), that charged seven defendants with, *inter alia*, participation in and conspiracy to participate in a racketeering enterprise. The 12S indictment charged that from approximately January 1, 1980, to October 31, 1987, "the Jackson organization", including the organization's leadership, members, and associates, constituted an enterprise "associated in fact" within the meaning of 18 U.S.C. § 1961(4), which had as its purpose the obtaining of income for the members of the enterprise through a large-scale scheme to distribute heroin in Manhattan, the Bronx, Bridgeport, Connecticut, Wash-

---

[*] Shortly before the oral argument of this appeal, the third member of the panel found it necessary to disqualify himself. As announced at oral argument, and consistent with § 0.14(b) of the Rules of the Second Circuit, 28 U.S.C. Rules, United States Court of Appeals for the Second Circuit § 0.14(b), the appeal has been decided by the remaining two judges who agree as to the disposition.

ington, D.C., and Boston, Massachusetts. From approximately late 1983 through 1987, the Jackson organization was headed by James Jackson, who eventually became the government's chief witness at trial. The indictment also charged that to protect and preserve the enterprise, its members resorted to fraud and violence, including murder.

Through Jackson's testimony and other evidence, the government presented evidence at trial that the members of the racketeering enterprise distributed millions of dollars worth of heroin over a seven-year period in various locations on the East Coast. Additionally, the government presented evidence that one or more of the defendants charged in the 12S indictment were responsible for at least seven murders and two attempted murders.

The jury convicted all appealing defendants of participation in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), and of conspiracy to violate RICO, 18 U.S.C. § 1962(d). In addition, Reiter was also convicted of operating a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a); two counts of distributing heroin, in violation of 21 U.S.C. § 841; using a telephone to facilitate the commission of a narcotics felony, in violation of 21 U.S.C. § 843(b); and conspiracy to impede the Internal Revenue Service in ascertainment and collection of taxes, in violation of 18 U.S.C. § 371. Rollack, Smith, and Clark were each convicted of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Rollack and Smith were also convicted on two counts each of possessing heroin with intent to distribute, in violation of 21 U.S.C. § 841.

Each defendant attacks his convictions on numerous grounds. After careful review, we find most of defendants' arguments to be unworthy of extended treatment, and we limit discussion to (1) Rollack's contention that the district court erred in trying him *in absentia* on the 12S indictment when he had been arraigned only on the fourth superseding indictment (4S indictment); and (2) Smith's claim that the ineffectiveness of his trial counsel mandates reversal of his convictions.

## II.  DISCUSSION

### A.  *Trial of Rollack in Absentia*

■ Rollack claims that his trial *in absentia* on the 12S indictment, on which he was never arraigned, violated his sixth amendment right of confrontation and his right under Fed.R.Crim.P. 43 to be present at the time of arraignment and the taking of the plea. The government counters that Rollack waived his right to presence when, following arraignment on the 4S indictment and after he had knowledge that he was soon to be arraigned on the tenth superseding indictment (the 10S indictment), Rollack absconded. We hold that the 4S indictment on which Rollack was arraigned was insufficiently similar to the 12S indictment on which he was tried to apprise Rollack of the nature of the proceedings against him. Because Rollack therefore had insufficient knowledge to waive his right to presence, trial in his absence was improper.

A brief review of the charges against Rollack in the 4S, 10S, and 12S indictments is necessary. In the 4S indictment, Rollack was named as a member of the Jackson heroin distribution enterprise, and charged with (1) distribution of heroin in July 1983 in Manhattan, New York; (2) conspiracy to distribute heroin, based on the July 1983 distribution; and (3) separate counts of participation in a racketeering enterprise and conspiracy to violate the racketeering laws. The underlying RICO predicate acts were the July 1983 distribution and the conspiracy charge based on that distribution.

At his arraignment on August 17, 1987, Rollack pled not guilty to the 4S indictment. In September 1987 James Jackson entered into a formal cooperation agreement with the government and supplied information which permitted the government to charge additional crimes against Rollack and his codefendants. Based on the new information, the government, on October 27, 1987, filed the 10S indictment which charged Rollack for the first time, in a predicate racketeering act, with murder-

ing a man named Norman Bannister and with conspiracy to commit that murder. Rollack was also charged for the first time with two new substantive counts alleging possession of heroin with intent to distribute in two separate locations in the Bronx, New York. These two new charges were added as new predicate acts of the substantive racketeering count and new overt acts for the heroin conspiracy charge. The 10S indictment also realleged the July 1983 heroin distribution and the RICO predicates and overt acts based on that distribution.

By letter dated November 2, 1987, the government distributed to counsel copies of the 10S indictment and scheduled arraignment for November 6, 1987. Rollack's attorney obtained an adjournment of Rollack's arraignment to November 13, 1987, but Rollack absconded before that date and was never arraigned on the 10S indictment.

On February 23, 1988, the government filed the final indictment in the case—the 12S indictment. The charges against Rollack in the 12S indictment were identical to those in the 10S, but the government broadened the scope of the racketeering enterprise in the 12S indictment to include new codefendants who supplied the heroin to Rollack and to the rest of the Jackson distribution organization. One of the new codefendants was also a member of the Gambino organized crime family.

In summary, when compared with the 4S indictment on which Rollack was arraigned, the 12S indictment, on which he was tried *in absentia,* charged him with participation in a substantially broadened racketeering enterprise. It also included two new substantive acts of drug distribution which were added as new predicate acts of racketeering and new overt acts of the drug conspiracy, and perhaps most importantly, it newly charged Rollack with responsibility for the Bannister murder.

### 1. Right to Presence

A defendant enjoys both a constitutional right and a right under Fed.R.Crim.P. 43 to be present at trial. The constitutional right is premised on an accused's sixth amendment right to confront his accusers,

*see Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970), and fifth and fourteenth amendment due process right to be present at certain trial-related proceedings where he is not actually confronting witnesses or evidence against him, *see Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *United States v. Gagnon,* 470 U.S. 522, 526–27, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam); *United States v. Crutcher,* 405 F.2d 239, 242 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969).

The right of presence at trial has also been codified in rule 43 which provides:

(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

Fed.R.Crim.P. 43(a). In framing rule 43, Congress explicitly intended to codify existing law concerning an accused's constitutional and common law rights of presence at trial. *United States v. Fontanez,* 878 F.2d 33, 35 (2d Cir.1989). Thus rule 43 encompasses the protections afforded by the sixth amendment confrontation clause, the due process clause of the fifth amendment, and the common law right of presence. *Fontanez,* 878 F.2d at 35; *United States v. Gordon,* 829 F.2d 119, 123–24 (D.C.Cir.1987); *United States v. Alessandrello,* 637 F.2d 131, 138 (3rd Cir.1980), *cert. denied,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981).

It is well established, however, that despite its constitutional and statutory underpinnings, the right of presence may be waived as long as the waiver is both knowing and voluntary. *See, e.g., Taylor v. United States,* 414 U.S. 17, 18–20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (per curiam); *Diaz v. United States,* 223 U.S. 442, 455–58, 32 S.Ct. 250, 253–55, 56 L.Ed. 500 (1912); *Fontanez,* 878 F.2d at 35; *United States v. Hernandez,* 873 F.2d 516, 518 (2d Cir.1989); *United States v. Tortora,* 464 F.2d 1202, 1208 (2d Cir.), *cert. denied,* 409

U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). Indeed, rule 43(b)(1) itself provides that "[t]he further progress of the trial * * * shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present, * * * is voluntarily absent after the trial has commenced * * *."

In *Tortora,* 464 F.2d at 1209, we stated that trial may proceed in a defendant's absence if "[i]t * * * clearly appear[s] in the record * * * that the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place * * *." This is so because a defendant may not unilaterally set the time or circumstances of his trial. *United States v. Sanchez,* 790 F.2d 245, 249 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986); *Tortora,* 464 F.2d at 1208; *United States v. Bentvena,* 319 F.2d 916 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 346, 353, 354, 355, 360, 11 L.Ed.2d 271, 272 (1963). Instead, the defendant bears the burden of justifying his absence from a known proceeding against him. *Sanchez,* 790 F.2d at 249; *Tortora,* 464 F.2d at 1209.

Rollack's primary contention is that, absent arraignment, he had insufficient knowledge of the proceeding against him to "knowingly" waive his right to presence. He argues that rule 43 and our language in *Tortora* preclude trial in a defendant's absence unless he has been arraigned on the particular indictment that is the subject of the trial. In *Tortora,* we undertook our most extensive discussion of the knowledge a defendant must have before he may waive presence and be tried *in absentia:*

> Before a trial may proceed in the defendant's absence, the judge must find that the defendant has had adequate notice of the charges and proceedings against him. Notice is initially given to a defendant by the issuance of an indictment. But not until the defendant answers the indictment by pleading in open court to the charges therein can a court know with certainty that the defendant has been apprised of the proceedings begun

against him. Thus no defendant can be tried until after he personally has entered a plea to the charge.

464 F.2d at 1209.

Rollack asserts that this language erects an absolute barrier to trial *in absentia* on any indictment until a defendant has been arraigned, because only arraignment and plea in open court assure that the defendant had notice of the charges against him. The government, on the other hand, contends that *Tortora* means only that a defendant must have "been apprised of the proceedings begun against him". According to the government, once a defendant has been arraigned on an indictment, and is therefore aware that criminal proceedings have begun against him, he may be tried *in absentia* on any superseding indictment if the district court finds, based on the circumstances of the case, that the defendant must have had notice of the charges against him. We disagree with both contentions.

First, we stress that *Tortora* did not deal with a superseding indictment, but with the government's issuance of a first indictment. *Tortora,* then, holds only that when the government initiates new criminal proceedings against a defendant, the defendant must be arraigned and must plead in open court in accord with rule 43(a) to ensure that the defendant knows the proceedings have begun against him and also knows the nature of those proceedings. *Accord United States v. Christopher,* 700 F.2d 1253, 1261–62 (9th Cir.), *cert. denied,* 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *United States v. Diacolios,* No. 84 Cr. 436–CSH (S.D.N.Y. Sept. 9, 1986) (Available on LEXIS, Genfed Library, Dist File) (Available on WESTLAW, Federal Database, 1986 WL 10294); *see also* 8B J. Moore, Moore's Federal Practice ¶ 43.02[2], at 43–13 (2d ed. 1989) ("In felony cases, the defendant's presence at arraignment [and] at the time of plea * * * is mandatory."). A defendant's knowledge that particular proceedings have begun is so critical that we will not permit trial *in absentia* based on fine calculations of what the defendant knew, what he might have

known, or what he should have known. Instead, we insist, as in *Tortora,* on a *per se* rule that requires an arraignment.

This *per se* rule of arraignment also applies in the superseding indictment context, at least where it serves the same function we held critical in *Tortora:* notifying a defendant that particular proceedings have been initiated against him. Thus, when a superseding indictment is sufficiently different from a prior indictment on which the defendant has been arraigned that it is tantamount to the initiation of "new" criminal proceedings against the defendant, and the prior arraignment cannot reasonably be said to have apprised the defendant of the current proceedings, the government may not proceed *in absentia* on the superseding indictment unless the defendant has been arraigned on the superseder. *Cf. United States v. Londono,* 659 F.Supp. 984, 987 (E.D.N.Y.1987) (arraignment not prerequisite to trial *in absentia* on superseding indictment where defendant had been arraigned on prior indictment because, though superseding indictment added new charges, it constricted scope of conspiracy). In such a situation, only arraignment ensures the defendant has been apprised of the current criminal proceeding against him.

In this case, Rollack was arraigned on the 4S indictment as a one-time heroin distributor, a narcotics conspirator, and a narcotics racketeer, based on a single distribution of heroin in July 1983 in Manhattan. The 12S indictment, by contrast, based in large part on the vastly expanded evidence the government gained after enterprise-chief Jackson began cooperating, broadened the conspiracy in which Rollack was charged to include not only those conspirators involved in distribution of heroin, but also those responsible for supplying the heroin. It also named Rollack for the first time in a predicate act alleging murder and conspiracy to commit the Bannister murder.

The addition of the murder predicate linking Rollack for the first time with participation in the murder and with the violence used to protect the racketeering en-

terprise, combined with the substantially broadened scope of the enterprise, rendered the 12S indictment sufficiently different from the 4S that arraignment on the 12S indictment was required before Rollack could be tried *in absentia.* In this context, only arraignment could ensure that Rollack had notice of the proceedings and that any waiver was "knowing".

Finally, the error was not harmless. In determining whether error is harmless, we may uphold a conviction only if the government can establish beyond a reasonable doubt that the defendant's absence did not create "any reasonable possibility of prejudice." *Fontanez,* 878 F.2d at 37 (quoting *United States v. Toliver,* 541 F.2d 958, 965 (2d Cir.1976)); *Walker v. United States,* 322 F.2d 434, 436 (D.C.Cir.1963), *cert. denied,* 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964). *See also Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Where, as here, the defendant was absent from an arraignment necessary to ensure that he had notice of the nature of the proceedings against him as well as all subsequent phases of the trial, the government cannot meet its heavy burden of showing that Rollack's absence did not create "any reasonable possibility of prejudice." *Christopher,* 700 F.2d at 1262. We therefore reverse and remand Rollack's case for new trial.

### B. *Ineffective Assistance of Smith's Counsel*

█ Defendant Smith contends that his convictions must be reversed on grounds of ineffective assistance of counsel. We disagree.

Immediately following his convictions, Smith obtained new counsel and moved for a new trial. He argued that his trial attorney, Wilmer Grier, had provided ineffective assistance because, *inter alia,* (1) she failed to move to suppress bullets and cash found in Smith's pockets while he was in a hospital receiving medical attention for a bullet wound; (2) she failed to develop through cross-examination and to communicate to the jury Smith's theory of defense that chief prosecution witness, James Jack-

son, would lie about Smith's involvement in the drug organization because Jackson felt sexually inferior to Smith; and (3) she had pled guilty to a misdemeanor forgery charge shortly before trial commenced. He also asserted that Grier's latenesses and absences during the four-month trial, which led to various reprimands from the trial judge, to two findings of contempt against Grier, and ultimately to the court's ordering Grier's incarceration at the Metropolitan Correctional Center for a short period in order to ensure her appearance at trial, constituted ineffective assistance.

The trial court examined all of Smith's claims under the two-pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires that to establish ineffective assistance of counsel, a defendant must demonstrate both that his attorney's conduct fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064, and that but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. The court held that Grier's failure to move to suppress evidence in combination with her frequent latenesses and absences and her entire cross-examination of Jackson, fell below professionally reasonable standards, but that the claim of ineffective assistance nevertheless failed because, given the overwhelming evidence of Smith's guilt, he was not prejudiced by Grier's performance.

In this appeal, Smith advances additional claims of Grier's ineffectiveness and now argues that the mistakes were so pervasive that he, in effect, had no counsel at all. He therefore urges that prejudice be presumed. *See, e.g., United States v. Cronic,* 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984). After careful scrutiny of the record, we hold that Grier's performance, though at times below an objective standard of reasonableness, did not fall to the level of constructive absence. In analyzing the claims premised on Grier's deficient performance at trial, therefore, the trial judge correctly applied the two-part *Strickland* standard that required Smith to prove prejudice, and he correctly

concluded that in the face of the overwhelming evidence against him, Smith had not met that burden.

Nor could Smith succeed even on his present contention that the burden should be on the government to prove beyond a reasonable doubt that Grier's absences did not contribute to the verdicts. *See Satterwhite v. Texas,* 486 U.S. 249, 256–58, 108 S.Ct. 1792, 1797–98, 100 L.Ed.2d 284 (1988); *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 353–54, 102 L.Ed.2d 300 (1988); *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067; *Cronic,* 466 U.S. at 658–60, 104 S.Ct. at 2046–47; *Sanders v. Lane,* 861 F.2d 1033, 1040 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1323, 103 L.Ed.2d 591 (1989); *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1017–19 (7th Cir. 1988); *Siverson v. O'Leary,* 764 F.2d 1208, 1217–21 (7th Cir.1985).

■ Judge Owen did not rest his conclusion on the differing burdens of proof that apply under *Strickland* and *Satterwhite.* He went further and made express factual findings that Grier's collective errors, including her absences from trial, did not have any impact on the outcome of the trial. In denying Smith's motion for a new trial, Judge Owen also expressly found that "in view of the 'overwhelming record support' against Smith neither Grier's failure to suppress nor other instances of concededly questionable and unprofessional conduct warrant a new trial, since the outcome in my view *would have been the same* even absent these incidents." *United States v. Smith,* No. 87 Cr. 132 (S.D. N.Y. April 10, 1989) (emphasis added). Moreover, Judge Owen found that "the evidence was *so overwhelming* and left *no doubt* of guilt of murders and narcotics trafficking, testified to over nearly four months, [that] * * * [no] view of the desirable pristine image of law requires a second and extended trial [for] Smith where the *outcome would unquestionably be the same*". *Id.* at n. 8 (emphasis added). These findings are fully supported by the record.

**646**

## C. *Other Claims*

We have carefully reviewed the claims of the other appealing defendants and, finding all to be without merit, we affirm the convictions of each.

### III. CONCLUSION

The convictions of Mark Reiter, Raymond Clark, Alfred Dicks, and Timothy Smith are affirmed in all respects. The conviction of Leonard Rollack is reversed and remanded for a new trial because his trial *in absentia* absent arraignment on the 12S indictment was improper.