Pedro Antonio **SANTANA**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

**Nos. 91 Civ. 5335 (JES), 89 Cr. 594 (JES).**

United States District Court,
S.D. New York.

Feb. 1, 1995.

Pedro Antonio Santana, petitioner *pro se.*

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City (Peter K. Vigeland, Asst. U.S. Atty., of counsel), for respondent.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner *pro se* in the above-captioned action brings this 28 U.S.C. § 2255 petition to vacate his judgment of conviction on the grounds of ineffective assistance of counsel and government suppression of exculpatory and impeachment evidence concerning the informant. In the alternative, petitioner maintains that his sentence should be modified due to his "minor participation" in the proposed sale of cocaine. For the reasons that follow, the petition is denied.

## BACKGROUND

Indictment 89 Cr. 594 charged Pedro Antonio Santana ("Santana") with two counts of narcotics violations, *i.e.,* conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(B). During Santana's four-day trial in November 1989, the government called a confidential informant, Gerson Ferrer ("Ferrer"), and two Special Agents of the Drug Enforcement Administration ("DEA") who established the following facts. On or about July 31, 1989, two DEA informants, one of whom was Ferrer (collectively the "informants"), met with an unidentified man at La Concha Restaurant on 162nd Street and Broadway. Ferrer Tr. (Nov. 27, 1989) at 53–6. The unidentified man took the informants in a car to 160th Street and Broadway to meet with petitioner, Pedro Antonio Santana ("Santana"), who stated that he could supply three kilograms of cocaine to Ferrer at a price of $17,500 per kilogram. Ferrer Tr. (Nov. 27, 1989) at 56. The informants set up a deal with Santana for later that afternoon and then went to 151st Street and

Broadway to meet with John McKenna ("McKenna"), a DEA agent. Ferrer Tr. (Nov. 27, 1989) at 57.

After discussing the details of the investigation with agent McKenna and other DEA agents at 150th Street and Riverside, the informants drove, with the DEA agents following close behind, to 160th Street and Broadway to meet with Santana. Ferrer Tr. (Nov. 27, 1989) at 61–4. Ferrer met Santana at 160th Street and Fort Washington. McKenna Tr. (Nov. 29, 1989) at 245. The DEA surveillance team saw Santana make one phone call at the corner, and then both Santana and Ferrer went into apartment number 44 at 648 West 160th Street, McKenna Tr. (Nov. 29, 1989) at 247–50, where two of four individuals they met escorted them to a back room. Ferrer Tr. (Nov. 27, 1898) at 72–4. Ferrer testified that "they showed me two yellow bricks that they later opened, and I tested and I believe was cocaine. And they also pulled out a gray case which contained several packages of plastic Ziploc bags." Ferrer Tr. (Nov. 27, 1989) at 74. After testing the quality of the two uncut bricks, Ferrer told Santana that he had to go downstairs to get the money for the cocaine. Ferrer Tr. (Nov. 28, 1989) at 88–90.

After Santana and Ferrer exited the building, DEA agent McKenna arrested Santana and then proceeded with the other DEA agents to apartment 44. McKenna Tr. (Nov. 29, 1989) at 249–50. The DEA agents recovered one kilogram of cocaine in apartment 44 and two other kilograms in an alleyway outside. McKenna Tr. (Nov. 29, 1989) at 251–54.

In his defense at trial, Santana raised a claim of entrapment by the informant. He testified to a number of chance meetings with Ferrer at which he repeatedly refused Ferrer's request to participate in his drug transaction. Santana Tr. (Nov. 29, 1989) at 334, 344. According to Santana, on the day he was arrested, he was not selling cocaine. Rather, as Santana testified, his sole function was to protect Ferrer during the drug transaction. Santana Tr. (Nov. 29, 1989) at 347.

On November 30, 1989, a jury found Santana not guilty on the conspiracy count and guilty on the substantive count of possession with intent to distribute three kilograms of cocaine in violation of 21 U.S.C. § 841(b)(1)(B). On February 28, 1990, the Court sentenced Santana to seventy-eight months imprisonment, four years supervised release, and a $50 special assessment on each count.

On December 26, 1990, Santana's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In January 1991, Santana filed a *pro se* appellate brief in which he claimed that the Court abused its discretion in not allowing Santana the opportunity to review the presentence report, that the evidence established entrapment as a matter of law, and that the Government's use of the informant constituted conduct so outrageous that petitioner's due process rights were violated. By summary order dated April 15, 1991, the Second Circuit relieved appellate counsel and affirmed the judgment of conviction. Petitioner does not pursue, in these collateral proceedings, any of the grounds set forth in his *pro se* memorandum.

In his § 2255 petition, Santana now attacks his conviction on the grounds that the ineffective assistance of trial counsel and appellate counsel violated his sixth amendment right to counsel and that the government suppressed exculpatory and impeachment evidence concerning the informant. In the alternative, Santana maintains that his sentence should be modified to account for his alleged "minor participation" in the proposed sale of cocaine.

## DISCUSSION

■■ It is the general rule that where, as here, a defendant has failed to raise a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom. *Campino v. United States*, 968 F.2d 187, 189 (2d Cir.1992); *see also United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1981). Under the cause and prejudice test, " '[c]ause' . . . must be something *external* to the petitioner, something that can not be fairly attributed to him," *Coleman v. Thomp-*

son, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), and the "prejudice" must be so substantial that it undermines the integrity of the entire trial. *Frady,* 456 U.S. at 169–170, 102 S.Ct. at 1595.

The Second Circuit has recently, however, carved out an exception to the *Campino* requirement that a § 2255 petition establish "cause." For those § 2255 petitions that raise an issue of ineffective assistance of counsel, "cause" does not have to be established unless (1) the petitioner was represented by new appellate counsel on direct appeal, or (2) the claim is based solely on the record developed at trial. *See Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir.1993). Santana has raised two grounds for his claim of ineffective assistance of counsel: (1) that trial counsel failed to act as an effective advocate when the prosecutor allegedly withheld exculpatory and impeachment evidence concerning the informant; (2) that appellate counsel filed an *Anders* brief without petitioner's knowledge. Although new counsel was appointed on appeal, these claims are not based solely on the record developed at trial, and therefore they fall within the *Billy–Eko* exception to *Campino.*

Nevertheless, Santana's claims of ineffective assistance of counsel lack merit. The standards governing Santana's claim of ineffective assistance of counsel are well-settled. The defendant must: (1) overcome a strong presumption that his counsel's conduct was reasonable and show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms;" and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984); *see also United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990); *United States v. Reiter,* 897 F.2d 639, 644–45 (2d Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *United States v. Bari,* 750 F.2d 1169, 1182 (2d Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

Santana's contentions in support of his claims of ineffective assistance of both trial and appellate counsel fall far short of overcoming the strong presumption that his counsel's conduct was reasonable. The record clearly shows that trial counsel meticulously cross-examined the government's witnesses, *see* Ferrer Tr. (Nov. 27, 1989) at 96–168, and pressed the theory of entrapment through Santana's testimony and his cross-examination of the informant Ferrer. *See* Ferrer Tr. (November 27, 1989) at 96–168; Santana Tr. (November 29, 1989) at 326–46. The trial transcript also refutes Santana's allegation that the government did not produce notes and correspondence between the informant and the DEA. Ferrer Tr. (Nov. 28, 1989) at 104, 108.

Moreover, Ferrer testified that he had served as an informant in ten to fifteen other arrests, Ferrer Tr. (Nov. 28, 1989) at 120, that he had received compensation for his information in each case based on the quantity of drugs seized, Ferrer Tr. (Nov. 27, 1990) at 44, that his role in the DEA was that of an informant, Ferrer Tr. (Nov. 27, 1989) at 38, and that he did not carry a gun or have the authority to carry a DEA badge. Ferrer Tr. (Nov. 27, 1989) at 39.

In light of that record, Santana's allegation that exculpatory and impeachment evidence relating to

> "how many arrests Mr. Ferrer had previously been involved in, his role and compensation in the previous arrests he has been involved in, his *handler* [sic] including all notes, correspondence and either evidence generated between the two, what protection Mr. Ferrer was given, and whether he was allowed to impersonate a law enforcement officer, carry a weapon, and sport a D.E.A. badge ..."

Petitioner's Brief in Support ("Pet. Br.") at 10, was allegedly suppressed is untenable.

Santana's allegation that he was prejudiced by appellate counsel's filing of an *Anders* brief is bereft of factual support. Santana alleges that counsel filed an appellate brief pursuant to *Anders,* 386 U.S. 738, 87 S.Ct. 1396 (1967), without his prior knowledge. This isolated allegation is not enough to support a claim of ineffective assistance of appellate counsel. *McCoy v. Court of Appeals of Wisconsin District 1,* 486 U.S. 429,

442–44, 108 S.Ct. 1895, 1903–04, 100 L.Ed.2d 440 (1988); *see Mayo v. Henderson,* 13 F.3d 528 (2d Cir.1994).

■ With respect to Santana's remaining claims, Santana purports to satisfy *Campino's* "cause" requirement by alleging that he "threatened to come forward with the truth [at trial] but did not because of an anonymous phone call [his] wife received, that said in essence; '... if your husband makes a move on me by telling what happened, you can kiss your baby good-bye.'" Pet. Br. at 15. He claims that this threat, which he believes was made by Ferrer, "prevented [him] from telling the truth at trial." Pet. Br. at 15. However, Santana has not alleged what the so-called truth would have been had it not been for Ferrer's alleged threat, how that testimony would have differed from the testimony which he gave at trial and which the jury did not credit, or how that testimony could conceivably have affected the outcome of his trial.

Ferrer testified in detail at trial as to Santana's involvement in the transaction, *see* Ferrer Tr. (November 27, 28, 1989) at 47–96, for which Santana was convicted. Moreover, much of Ferrer's testimony was corroborated by agent McKenna who testified that he saw Santana and Ferrer leave 648 West 160th Street, *see* McKenna Tr. at 247–49, that he arrested Santana as Santana exited that building, *see* McKenna Tr. at 251–54, and that he then broke down the door of apartment 44 and seized a number of bags and two bricks of cocaine. *See* McKenna Tr. at 251–54. Furthermore, as noted above, Ferrer was cross-examined extensively and his credibility, or lack thereof, was the principal focus of defense counsel's arguments on summation. Trial Tr. at 434–40.

■ Santana's submission of an affidavit of a fellow inmate, Jose Almonte ("Almonte"), is similarly unavailing. In his affidavit, Almonte alleges that Ferrer committed numerous crimes, but these allegations essentially duplicate the arguments made by Santana at trial, *i.e.,* that Ferrer was in the business of entrapping people in a scheme to obtain money from the DEA. Even assuming that Almonte's allegations constituted "new" evidence and that Santana could not have uncovered the allegations prior to the trial, *see United States v. Dukes,* 727 F.2d 34, 38 (2d Cir.1984), those allegations at best constitute further evidence to impeach a witness whose testimony was extensively attacked at trial.

[9] Finally, Santana's alternative argument that the Court should have departed downward in sentencing because of his alleged role as a "minor participant" pursuant to § 3B1.2(b) of the Sentencing Guidelines lacks merit. Sentencing Guideline § 3B1.2(b) provides for a decrease in the offense level if the defendant is found to be a "minor participant" in the criminal activity. *See* Sentencing Guidelines § 3B1.2(b). This provision applies to one whose role in the offense "is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Commentary. However, since the facts elicited at trial established that Santana acted as a broker in the sale of the cocaine, he was clearly not entitled to such a downward adjustment. *See United States v. Rosado–Sierra,* 938 F.2d 1 (1st Cir.1991).

### CONCLUSION

For the reasons stated above, the Clerk of the court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**