UNITED STATES of America, Appellee,

v.

Heriberto ROSARIO, also known as "Eddie"; Miguel Kercado, also known as "Mickey"; Carlos Rivera, also known as "LL"; Vincent Basciano, also known as "Vinnie"; Albert Biscaglio, also known as "Allie"; John O'Rourke, also known as "XYZ"; Eustrogio Matute, also known as "Panama"; William Mendoza, also known as "Willie"; Marcos Delgado, Jr., also known as "Papo"; Pedro Gonzalez, also known as "Klepper Duche"; Carlos Quinones, also known as "Charlie Lie"; Julio Salas, also known as "Sal"; Angel Alvarado; Ronald Richardson; Alex Pacheco, also known as "Cool E"; David Delvalle; Hector Suarez; Porfirio Ortiz; Noel Melendez; Gregory Williams; Mildred Her-

---

294

nandez; Sonia Rivera; Jose Kercado; Raimundo Hurdle; Frank Colon; Charles Colon; Griselda Colon; William Lopez; Jose Agosto; Carmen Mendoza; Miguel Rodriguez; Samanta Torres; Larry Weinstein, Defendants,

Eric Millan, also known as "Moe"; Alfred V. Bottone, Sr., also known as "Fat Al"; Ralph Rivera, also known as "TJ"; Myles Coker, also known as "Mouse"; JOSE COLON, also known as "Black Jose"; Alfred Bottone, Jr., also known as "Alfie", Defendants–Appellants.

Nos. 9, 29, 17, 11, 7, 10, 214 and 215, Dockets 94–1516, 94–1592, 94–1604, 94–1606, 94–1614, 95–1015, 95–1531 and 95–1687.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1996.

Decided April 14, 1997.

David I. Schoen, New York City, for Defendant–Appellant Eric Millan.

Maurice H. Sercarz, New York City, for Defendant–Appellant Alfred V. Bottone, Sr.

John M. Apicella, Brooklyn, NY, for Defendant–Appellant Ralph Rivera.

Julia Heit, New York City, for Defendant–Appellant Myles Coker.

Roger J. Schwartz, New York City, for Defendant–Appellant Jose Colon.

Mark M. Baker, New York City (Benjamin Brafman, Mindy Leifer, Brafman, Gilbert And Ross, P.C., New York City, Michael H. Handwerker, Jacqueline Gayner, Handwerker, Honschke, Marchelos And Gayner, New York City, Brenda Grantland, Mill Valley, CA, of counsel), for Defendant–Appellant Alfred Bottone, Jr.

Dietrich L. Snell, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Dietrich L. Snell, Roland G. Riopelle, Sharon Cohen Levin, Martine M. Beamon, Ira M. Feinberg, Guy Petrillo, Assistant United States Attorneys, New York City, of counsel), for Appellee.

(Jeffrey Steinborn, Steinborn & Associates, Seattle, WA, on the brief), for Amicus Curiae Forfeiture Endangers American Rights Foundation.

Before: FEINBERG, ALTIMARI and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Appellants appeal from judgments of conviction of the United States District Court for the Southern District of New York (Shirley Wohl Kram, *Judge*) entered on several dates between September 21, 1994 and December 27, 1994.

## I. BACKGROUND

Appellants were convicted for their participation in a large-scale heroin drug conspiracy ring operated in the greater New York city area and in outlying counties of New York and New Jersey under the brand name "Blue Thunder." The background facts are set forth in our previous decisions in this case, and in the published decisions of the district court, familiarity with which is assumed. We recount only the facts relevant to the present appeals. In addition, certain issues raised on appeal have been addressed by a separate summary order, filed concurrent herewith, and will not be discussed in this opinion.

## II. DISCUSSION

A. *Admission of a Redacted Excerpt from a Defendant's Proffer Statement in Favor of a Co-defendant*

■ The first issue we are called upon to determine is whether redacted excerpts from a proffer of one of the defendants were properly admitted. Appellant Alfred Bottone Sr. argues that admission of the statements was precluded under Rule 11(e)(6)(D) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence because they were made in the course of plea negotiations. We hold that the district court's ruling to admit the excerpts was appropriate.

Bottone Sr. regularly shipped bulk quantities of heroin for consignment sale to a variety of retail distribution organizations involved in the conspiracy. Prior to trial, Bottone Sr. entered into a proffer agreement with the government in which the government agreed not to offer any statements made by Bottone Sr. in its case-in-chief.

During the proffer interview, Bottone Sr. admitted his involvement in narcotics trafficking. In the redacted statements at issue, Bottone Sr. claimed that co-defendant Vincent Basciano was not involved in heroin trafficking, and that certain tape-recorded conversations admitted in evidence, obtained pursuant to a Title III investigation, concerned discussions about an illegal gambling business in which Bottone Sr. and Basciano were involved—not heroin transactions.

In the course of the trial, after *in camera* inspection by the court, Basciano was able to obtain the redacted statements as potentially exculpatory *Brady* material. He offered them into evidence pursuant to Rule 806 of the Federal Rules of Evidence.[1] Rule 806

---

1. He had earlier offered them under Rule 804(b)(3) (as statements against penal interest of

permits introduction of out-of-court statements of a coconspirator for the purpose of impeaching that co-conspirator's statements admitted into evidence under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Rule 801(d)(2)(E) provides for the admission of statements by a co-conspirator, made during the course and in furtherance of a conspiracy. Basciano argued that Bottone Sr.'s proffer statement, stating that Basciano was in the gambling business and had nothing to do with the heroin business, impeached the statements on audiotape which had earlier been admitted as statements by a co-conspirator during the course and in furtherance of a conspiracy, including a taped statement in which Bottone Sr. allegedly discussed heroin trafficking matters with Basciano.

Bottone Sr. opposed Basciano's motion on the ground that the statements were inadmissible under Federal Rule of Criminal Procedure 11(e)(6)(D), Federal Rule of Evidence 410, and this Court's holding in *United States v. Serna*, 799 F.2d 842 (2d Cir. 1986). Rule 410, like Rule 11, provides that statements made in the course of plea discussions are inadmissible against the defendant participating in the plea discussion. The government agreed with that argument, but contested admission of the redacted proffer primarily on the ground that the statements did not have impeachment value because they were not inconsistent with any statement admitted in evidence through the tape recordings. The district court rejected these arguments, and the statements were admitted.

Rule 806 simply makes an otherwise hearsay statement admissible when the declarant (co-conspirator) has not taken the stand, but his statements have nevertheless come into evidence as a statement in furtherance of the conspiracy. Rule 806 does not overcome the Rule 410 objection if the statements being offered were obtained in a proffer session

and they are being offered against the person who made the proffer.

The question which is raised here is whether the redacted proffer statements were being offered against Bottone Sr. or in favor of Basciano. In *Serna*, this Court addressed an argument that a statement was offered only for a limited purpose in favor of a co-defendant, and not against Serna. We rejected that argument, stating that "there [was] a strong likelihood that the jury would have considered [the proffered statement] as evidence against Serna ... [and that a] limiting instruction would have been ineffective to protect Serna from the devastating impact of the statement that was tantamount to a confession." 799 F.2d at 849 (citing *Bruton v. United States*, 391 U.S. 123, 129, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476 (1968)).

We distinguish this case from *Serna*. In response to questioning during plea negotiations about the involvement of a codefendant in narcotics trafficking activity, Serna made a statement to an agent to the effect, "you have the wrong person." 799 F.2d at 848. In the instant case, the following testimony was elicited at trial from a Special Agent of the Drug Enforcement Administration by Basciano in his defense case:

> In substance Alfred Bottone, Sr. stated the following: "Bottone claimed that Vincent Basciano had nothing to do with the heroin business and that all the intercepted telephone conversations [involving] Basciano pertain to Basciano's gambling business. Bottone further claimed that Basciano's gambling business was a bad package and that he was advising Basciano in the intercepted conversations. Bottone denied that he was working for Basciano. He also claimed that he did not need anyone's approval to open up a numbers spot anywhere in New York City."

Though it was established that the statements were made about five months after

---

Bottone Sr.) but failed to get them admitted because the court ruled that Rule 11(e)(6)(D) precluded any testimony concerning the circumstances of the proffer. Bottone Sr. argues that this earlier ruling somehow prevented the later admission of the statements, or shows that the admission was in error. We reject that argu-

ment. The fact that the court may have been mistaken in its earlier ruling, or simply saw things differently later in the trial (there is some uncertainty as to the precise extent of the earlier ruling), has no impact whatsoever on the later decision to admit the statements.

Bottone Sr. was arrested, the jury was not informed of the fact that the statements were made at a proffer session. Also, the court instructed the jury not to consider either the substance of the statements or the circumstances in which they were made in evaluating the guilt or innocence of Bottone Sr. The district court found that there was no danger that the jury would consider this evidence against Bottone Sr., and on this basis, distinguished this Court's decision in *Serna*.[2] For this same reason, among others, the court also rejected defendant's request for severance on the basis of antagonistic defenses. We find both those rulings proper.

In *Serna*, this Court considered Serna's statement as a confession of guilt, because saying that the authorities had the "wrong" man necessarily implied that Serna knew who the "right" man was—that is, who was involved in the narcotics deal with him. In contrast, Bottone Sr.'s statement that he and Basciano were involved in gambling, not in the heroin business, did not imply that Bottone Sr.'s knowledge derives from his own involvement in the heroin business. The explanation which was offered to support the statement that Basciano was not involved in the heroin business is that both Bottone Sr. and Basciano were involved in the gambling business rather than the drug business—an assertion that Bottone Sr. maintained throughout trial as an integral part of his defense.

Furthermore, in that respect, Bottone Sr.'s and Basciano's defenses were not antagonistic, but consistent, and Bottone Sr.'s request for severance was properly denied as he failed to demonstrate the requisite prejudice to outweigh the trial court's considerations to deny the severance request under Rule 14 of the Federal Rules of Criminal Procedure. *See United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir.1986); *United States v. Figueroa*, 618 F.2d 934, 944-45 (2d Cir.1980); *United States v. Burke*, 700 F.2d 70, 83 (2d Cir.1983). The district court had weighty

reasons not to grant the severance near the end of the six-month trial which had already suffered one mistrial. The court properly determined that there was not "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993).

We conclude that the facts in this case are distinguishable from those of *Serna*, and that the court's determination that the evidence would not be considered against Bottone Sr. was proper. In the case at bar, the inference is not necessarily, or even likely, drawn that Bottone Sr. confessed his guilt when he made the statements that were admitted. Accordingly, we affirm the district court's decision.

B. *Defendant's Due Process Right to be Present During Post–Verdict Questioning of a Juror Concerning Alleged Bias*

■ The next issue we decide is whether a defendant has a due process right to be present during the questioning of a juror, after a verdict has been rendered but before sentence is imposed, for the purpose of challenging the juror's alleged bias. We also address whether the trial court met its full duty to inquire into the fitness of a juror.

Appellant Ralph Rivera argues that his due process right to be present during trial was violated when he was excluded during the post-verdict questioning of a juror by the court concerning Rivera's allegations of bias. The alleged bias stems from Rivera's belief that he and the juror in question knew each other socially in Greenwich Village for a period of over ten years from the 1970s to 1980s.

On May 9, 1994, the jury returned a guilty verdict against Rivera for his role in the heroin distribution conspiracy. Subsequently, on May 11, 1994, Rivera pled guilty under federal forfeiture provisions to obtaining property constituted and derived from the proceeds of the drug business. On that same

---

**2.** The district court also appeared to be persuaded by Basciano's citation to this Court's decision in *United States v. Myerson*, 18 F.3d 153 (2d Cir.1994), which had been decided only ten days before. *Myerson* does supply support for the

admission of out-of-court statements of a coconspirator for impeachment purposes; however, the statements in that case did not derive from a proffer session. Accordingly, *Serna*, not *Myerson*, is the controlling authority here.

date, Rivera informed the court for the first time that he claimed to know one of the jurors. Rivera stated that he first became aware of this knowledge before the jury went into deliberation, but that he did not raise the issue at that time because he was having difficulty communicating with his appointed counsel. We have addressed the issue of Rivera's ineffective assistance of counsel claims in the separately issued summary order and determined that Rivera's claims are unfounded.

The allegation of juror bias was raised by Rivera during a conference in the Judge's robing room. According to Rivera, he and the juror went out together almost every weekend to discos over a period of approximately ten years. Both of them also belonged to gangs that occasionally rivaled. To further support his allegation, Rivera named a member of the juror's former group, who had been close friends with the juror, and who testified against Rivera in a prior state court case. Rivera also recounted that, in an unrelated incident, a member of another gang was stabbed during an altercation with the juror's gang. That gang member was a codefendant in this case.

Rivera concludes that, based on the described interaction, it is not possible that the juror could not have realized who he was, and that it is impossible for the juror to disavow knowledge about the certain other named characters they had known in the past, and the one who figured in this case. For these reasons, Rivera asserts that the juror was less than candid with the court during voir dire.

Likely concerned that Rivera's presence might be intimidating, the judge then asked Rivera to leave the robing room while she questioned the juror. Rivera left without making his own objection and without objection by his counsel, who remained in the room throughout the ensuing questioning.

The court questioned the juror and found that the bias allegation was baseless. Though some of the juror's responses were vague, when asked whether he recognized Rivera, the juror responded, "No. I would have said something if I knew." Rivera's counsel contributed to the questioning. The district court denied Rivera's application to interview the juror more fully or to hire a private investigator to investigate the alleged prior relationship between Rivera and the juror.

On appeal, Rivera argues that the court's questioning of the juror *in camera* deprived him of his Fifth Amendment right of due process. The government argues that by failing to object, Rivera and his counsel waived Rivera's right to be present during the questioning of the juror.

Due process requires that a defendant be present at all stages of the trial "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934). *Accord Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir.1994); *United States v. Fontanez*, 878 F.2d 33, 35 (2d Cir.1989).

This right is codified in Rule 43 of the Federal Rules of Criminal Procedure which provides that a defendant, unless voluntarily absent, shall be present "at every stage of the trial including the impaneling of the jury and the return of the verdict." *See* Fed. R.Crim.P. 43; *United States v. Reiter*, 897 F.2d 639, 642 (2d Cir.1990).

The "touchstone of due process analysis ... is the fairness of the trial." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982) (discussing fairness where prosecutorial misconduct was alleged). We assume without deciding (as the government appears to concede) that Rivera's right to be present extended to the post-verdict stage after the jury had already been dismissed. We have previously held that "courts are, and should be, hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir.1983). "This is to avoid harassment of jurors, inhibition of deliberation in the jury room, a deluge of post-verdict applications mostly without merit, [ ] an increase in opportunities for jury tampering

... [and] to prevent jury verdicts from being made more uncertain." *King v. United States,* 576 F.2d 432, 438 (2nd Cir.1978) (citing *United States v. Crosby,* 294 F.2d 928, 950 (2d. Cir.1961)). As we explained in *United States v. Moten,* 582 F.2d 654 (2d Cir.1978), a trial court is required to hold a posttrial juror interrogation only when reasonable grounds for investigation exist. *Id.* at 666–67. Reasonable grounds are present when there is "clear," "strong" and "incontrovertible" evidence. *King,* 576 F.2d at 438 (quoting *United States v. Dioguardi,* 492 F.2d 70, 78, 79, 80 (2d. Cir.1974)).

It is well established that a defendant may waive his right to be present at any time during trial if his waiver is knowing and voluntary. *Reiter,* 897 F.2d at 642. Rule 43(b)(1) of the Federal Rules of Criminal Procedure states that the continued presence of the defendant is not required when the defendant voluntarily absents himself. We find that Rivera waived his right to be present during the questioning of the juror. The record is plain on its face. Neither Rivera or his counsel made any objection to the court's request for Rivera to excuse himself so that the juror might be questioned. The Supreme Court has held that "failure by a criminal defendant to invoke his right to be present under Federal Rule of Criminal Procedure 43 at a conference which he knows is taking place between the judge and a juror in chambers constitutes a valid waiver of that right." *United States v. Gagnon,* 470 U.S. 522, 529, 105 S.Ct. 1482, 1486, 84 L.Ed.2d 486 (1985) (per curiam).

In addition, Rivera's counsel remained present and was active during the entire questioning. Due process does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow." *Snyder,* 291 U.S. at 106–07, 54 S.Ct. at 332. Rivera's exclusion from the interview did not impair his counsel's ability to represent him. Though Rivera claims that, had he been present, he could have assisted his counsel in exposing the falseness of the juror's answers, the juror was questioned on every significant point Rivera relayed to the court. Furthermore, this Court has explained that a district court may address a juror outside the presence of all the parties to a criminal trial "when questioning of the juror before others might have a chilling or embarrassing effect on the juror." *United States v. Aiello,* 771 F.2d 621, 629 (2d Cir. 1985).

Accordingly, we hold that Rivera's due process rights were not infringed because he waived his right to be present while the juror was questioned.

Regarding the scope of the district court's inquiry, a trial judge is vested with very broad discretion to deal with problems that arise in connection with jury deliberations or a juror's fitness to deliberate. *Aiello,* 771 F.2d at 629. The decision to investigate jury misconduct allegations rests within the sound discretion of the district court. *United States v. Conover,* 772 F.2d 765, 770 (11th Cir.1985), *aff'd in part and remanded on other grounds sub nom. Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).

The "reasonable grounds" standard also applies to ascertain whether the scope of a hearing that has been held is adequate. "[W]hen ... it becomes apparent that the ... reasonable grounds to suspect prejudicial jury impropriety do not exist, the inquiry should end." *Sun Myung Moon,* 718 F.2d at 1234.

In determining whether to hold an investigative hearing, and its extent, the trial judge "will necessarily be directed by ... the credibility of the source." *United States v. Bradshaw,* 787 F.2d 1385, 1389 (10th Cir.1986). *Accord United States v. Hendrix,* 549 F.2d 1225, 1227–28 (9th Cir.1977); *United States v. Eubanks,* 591 F.2d 513, 516 (9th Cir.1979). The court suggested that given the specificity of Rivera's recollection of the extended prior association he alleges—if true—it is incredible that Rivera did not recognize the juror earlier "in light of the length of the trial and Rivera's self-professed prior close association with [the juror]." Whether Rivera himself was less than candid at some earlier stage in the trial by not admitting he knew the juror, or whether the allegation was wholly fabricated, the court could properly consider the circumstances and the timing of the allegation when determining how

far to take the investigation. Furthermore, as noted, Rivera admits that he first became aware of this knowledge before the jury went into deliberation. We have previously held that waiver will be found where a defendant knew of a "prejudicial outside influence before the jury finished deliberating, 'but [ ] nevertheless stood mute, gambling on an acquittal while holding [the] issue in reserve.'" *Moten,* 582 F.2d at 667 (citing *United States v. Gersh,* 328 F.2d 460, 463 (2nd Cir.1964)).

Moreover, the juror was thoroughly questioned by the court, and while some of his responses were ambiguous at first, he did reply to direct questioning by the court that he would have stated that he recognized Rivera if that were the case. As the court noted, "[a]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court." *United States v. Easter,* 981 F.2d 1549, 1553 (10th Cir.1992) (citing *United States v. Greschner,* 802 F.2d 373, 381 (10th Cir.1986)). The court noted that the only indication in the record that the juror knew or recognized Rivera was Rivera's "naked assertions."

Under the circumstances, we find that the district court's scope of inquiry, and determination that there was no bias on the part of the accused juror, was proper.

C. *Vacatur of a Defendant's Conviction Required by Supreme Court Holding in Bailey v. United States*

■ Appellant Jose Colon was convicted for using and carrying a firearm during and in relation to narcotics trafficking, in violation of 18 U.S.C. § 924(c). The government concedes, and we hold, that in light of the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the conviction must be vacated.

The principal evidence at trial relating to the count included the testimony of the detective who searched Colon's residence at the time of the arrest and recovered two firearms from a bedroom closet, and two firearms in the garage located on the ground floor of the apartment building. An accomplice-witness also testified that Colon had given him a gun for delivery to a co-defendant. The same accomplice-witness testified that on another occasion, he also purchased a gun for Colon at his request, which another codefendant then advised Colon to hide in his garage. However, none of the testimony linked the guns discussed by the accomplice-witness with the guns that were recovered. The accomplice-witness also testified that he had never seen Colon carry or use a firearm in connection with his narcotics business.

*Bailey,* which was decided by the Supreme Court on December 6, 1995, holds that the "use" prong of § 924(c) must be proved by evidence sufficient to show an *"active employment* of the firearm by the defendant." *Bailey,* —— U.S. at ——, 116 S.Ct. at· 505 (emphasis in original). The Court held that a gun cannot be "used" within the meaning of § 924(c) merely on the basis that the gun's undisclosed presence emboldens or protects its owner, or on the basis that the gun is stored near drugs or drug proceeds for the purpose of protecting narcotics trafficking. *Id.* at ——, 116 S.Ct. at 508.

This marks a dramatic reversal of prior law in this Circuit, which had held that "possession of a gun under circumstances where the weapon is so placed as to be an integral part of the offense" was sufficient to establish "use." *See, e.g., United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.1989).

Accordingly, Colon's conviction on the § 924(c) charge must be vacated and his case remanded for (1) resentencing on the two remaining narcotics counts on which he was convicted; (2) consideration of whether to impose the two-level enhancement authorized under § 2D1.1(b)(1) of the United States Sentencing Guidelines for Colon's possession of firearms; and (3) return of the $50 special assessment fee imposed on this count.

D. *Vacatur of a Defendant's Conviction Required by Supreme Court Holding in Rutledge v. United States*

■ Appellant Ralph Rivera was convicted on a count of narcotics conspiracy, and a count which charged Rivera with engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a), among other

counts. In sentencing Rivera, the district court entered a written judgment on both counts, but pronounced a single sentence of life imprisonment, thus following the prevailing practice in this Circuit at the time, which was to allow the two separate convictions to stand—even though the conspiracy count was acknowledged to be a lesser-included offense of the CCE conviction-but to combine them for purposes of sentencing so that only one sentence, on the CCE count, would be imposed.

The government concedes, and we hold, that in light of the Supreme Court's decision in *Rutledge v. United States,* —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), Rivera's convictions for both the narcotics conspiracy and the CCE offense cannot stand, and that one count of conviction must be vacated.

In *Rutledge,* the Supreme Court expressly disapproved of the practice followed by courts in this Circuit. *Rutledge* held that a narcotics conspiracy charge is a lesser-included offense of a charge of engaging in a CCE, but entry of a judgment on both a CCE count and a conspiracy count "amounts to cumulative punishment not authorized by Congress." *Rutledge,* —— U.S. at ——, 116 S.Ct. at 1248. The Court noted that, if nothing else, entry of judgment on both convictions resulted in the assessment of an extra $50 special assessment. *Id.* The Court specifically disapproved of the "Second Circuit's practice of entering concurrent judgments," *id.* at ——, 116 S.Ct. at 1250, and held in that case that " '[o]ne of [the defendant's] convictions . . . is unauthorized punishment for a separate offense' and must be vacated," *id.* at —— – ——, 116 S.Ct. at 1250–51 (quoting *Ball v. United States,* 470 U.S. 856, 864, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985)). Thus, *Rutledge* requires that only one of Rivera's convictions be vacated, along with the $50 special assessment that was imposed on it.

Rivera's assertion that the forfeiture count to which he pled guilty should also be vacated because his narcotics conviction was vacated on appeal misinterprets the holding in *Rutledge.* Regardless of which conviction is vacated, the forfeiture conviction stands because the criminal forfeiture statute at issue, 21 U.S.C. § 853(a), expressly authorizes the forfeiture of property derived from or used to facilitate *any* violation of Title 21.

Accordingly, we vacate Rivera's conviction on the lesser-included offense count of conspiracy to distribute narcotics, and remand for return of the $50 special assessment that was imposed on it.

### III. CONCLUSION

All other convictions not addressed herein are affirmed.